1
2
3
4
5
6
7

JS-6

8           UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10

11   IN RE THE SOURCE HOTEL, LLC,        Case Nos. 8:21-cv-00824-FLA

12                  Debtor,                         8:21-bk-10525-ES

13   _____

14                                       **ORDER REVERSING
                                         BANKRUPTCY COURT'S ORDER**
15   SHADY BIRD LENDING, LLC,            **AND REMANDING FOR FURTHER
                                         PROCEEDINGS**
16                        Appellant,

17           v.

18

19   THE SOURCE HOTEL, LLC,

20                        Appellee.

21

22
23
24
25
26
27
28

1

1

## **RULING**

2
Before the court is Shady Bird Lending, LLC's ("Shady Bird" or "Appellant")
3
appeal of the Order of the United States Bankruptcy Court, Central District of
4
California, Santa Ana Division (the "Bankruptcy Court"), entered on April 28, 2021,
5
denying Appellant's Motion for Order Designating Chapter 11 Case as Single Asset
6
Real Estate Case Pursuant to 11 U.S.C. §§ 101(51B) and 362(d)(3) ("Order").

7
Shady Bird submitted its Opening Brief on June 25, 2021.  Dkt. 16 ("OB").  On
8
July 26, 2021, The Source Hotel, LLC ("The Source Hotel" or "Appellee"), submitted
9
its Answering Brief.  Dkt. 19 ("AB").  Shady Bird filed a Reply Brief on August 9,
10
2021.  Dkt. 21 ("RB").  The court finds this matter appropriate for resolution without
11
oral argument.  *See* Fed. R. Civ. P. 78(b); Local Rule 7-15.  For the reasons set forth
12
below, the Bankruptcy Court's Order is REVERSED, and the action is REMANDED
13
to the Bankruptcy Court for further proceedings.

14

## **BACKGROUND**

15
On February 26, 2021, The Source Hotel filed a voluntary petition under
16
chapter 11 of the Bankruptcy Code.  Dkt. 17 (Excerpts of Records Volume I, "EOR
17
Vol. I") at 0001-04.  Since 2014, The Source Hotel has been developing a hotel with
18
178 rooms, conference rooms, an executive lounge, fitness center, restaurant, bars,
19
and cleaning services (the "Hotel").  Dkt. 18-1 (Excerpts of Records Volume III,
20
"EOR Vol. III") at 0898.  To finance construction of the Hotel, The Source Hotel
21
obtained a $29.5 million construction loan (the "Loan") from Evertrust Bank
22
("Evertrust") as well as EB-5 investments totaling $35.5 million.  *Id.*  Construction
23
began in 2016.  *Id.*  According to Appellee, as of October 2019, construction of the
24
Hotel was approximately 85% complete, and approximately 15% of the Hotel
25
construction remains outstanding.  *Id.* at 0899.  In addition to developing the Hotel,
26
The Source Hotel intends to operate the Hotel and its related businesses, including the
27
restaurant and bars on the Hotel property.  *Id.*
28
/ / /

2

1    The original maturity date for the Loan was December 1, 2017, but was
2   extended to November 1, 2019, pursuant to written extension agreements. *Id.* In late
3   2019, Evertrust refused to issue the remaining $4 million of the Loan, claiming a cost
4   overrun on the construction of the Hotel. *Id.* at 0900. As a result of Evertrust's
5   refusal to provide the final $4 million of the Loan, The Source Hotel ceased
6   construction activities on the Hotel. *Id.* Evertrust and The Source Hotel engaged in
7   forbearance negotiations, but they were ultimately unsuccessful in reaching a formal
8   resolution. *Id.* at 0901. In December 2020, Shady Bird purchased Evertrust Bank's
9   interests in the Loan. *Id.*

10    On February 8, 2021, Shady Bird filed a complaint against The Source Hotel in
11   Orange County Superior Court ("Superior Court") for (i) specific performance and
12   appointment of a receiver, and (ii) waste, thereby commencing the Superior Court
13   action bearing case number 30-2021-01183489-CU-OR-CJC (the "State Court
14   Action"). *Id.* at 0902. Shady Bird took steps to foreclose on the Hotel immediately
15   and issued a Notice of a Trustee's Sale for the Hotel to be held on March 1, 2021. *Id.*
16   On February 17, 2021, the Superior Court entered an order in the State Court Action
17   appointing a Receiver to, among other things, take possession of the Hotel and all
18   goods, furniture, fixtures, and equipment attached and/or related to the Hotel. *Id.* As
19   a result of the foregoing, The Source Hotel sought Chapter 11 bankruptcy protection.
20   *Id.*

21    In its voluntary petition, The Source Hotel did not designate itself as "single
22   asset real estate." EOR Vol. I at 0002, ¶ 7. On March 25, 2021, Shady Bird filed a
23   Motion for Order Designating Chapter 11 Case as Single Asset Real Estate Case
24   Pursuant to 11 U.S.C. §§ 101(51B) and 362(d)(3) ("SARE Motion"). Dkt. 18
25   (Excerpts of Records Volume II, "EOR Vol. II") at 0539-692. The Bankruptcy Court
26   held a hearing on April 15, 2021, during which it explained its reasoning for finding
27   that the Hotel did not qualify as "single asset real estate." Dkt. 18-4 (Excerpts of
28   Records Volume VI, "EOR Vol. VI") at 1647-62. On April 28, 2021, the Bankruptcy

1  Court issued its Order denying Shady Bird's SARE Motion, and this appeal followed.

2  *Id.* at 1637-38.

3        The issues presented on appeal are whether the Bankruptcy Court erred in its

4  interpretation of 11 U.S.C. § 101(51B) ("§ 101(51B)") and its finding that The Source

5  Hotel did not satisfy the test for a single asset real estate case pursuant to § 101(51B).

6  OB 8.

7                              **STANDARD OF REVIEW**

8        When acting in its appellate capacity under 28 U.S.C. § 158(c)(1), the district

9  court reviews legal conclusions de novo and factual conclusions for clear error.  *In re*

10  *Olshan*, 356 F.3d 1078, 1083 (9th Cir. 2004).  De novo review requires this court to

11  "consider a matter anew, as if it has not been heard before, and as if no decision had

12  been rendered previously."  *In re Smith*, 435 B.R. 637, 643 (B.A.P. 9th Cir. 2010).

13  Clear error review, in contrast, is "highly deferential" and reversal is proper if the

14  court has "a definite and firm conviction that a mistake has been committed…."  *In re*

15  *Sussex*, 781 F.3d 1065, 1071 (9th Cir. 2015).

16        Mixed questions of law and fact are those which require the court to apply an

17  established set of facts to an undisputed rule of law.  *U.S. Bank Nat'l Ass'n ex rel.*

18  *CWCapital Asset Mgmt. LLC v. Village at Lakeridge, LLC*, 138 S. Ct. 960, 966

19  (2018).  "[T]he standard of review for a mixed question all depends—on whether

20  answering it entails primarily legal or factual work."  *Id*. at 967.  When the question

21  involves primarily legal principles, the court should review the lower decision de

22  novo.  *See id*.  When the question involves primarily factual issues "compelling [the

23  court] to marshal and weigh evidence," the court must review for clear error.  *See id.*

24        As discussed below, the court finds that this appeal primarily involves a review

25  of the Bankruptcy Court's statutory interpretation of § 101(51B), which calls for a

26  legal determination.  The court, therefore, reviews the Bankruptcy Court's Order

27  denying Shady Bird's SARE Motion de novo.

28  / / /

1

**DISCUSSION**

2

**I.    Legal Standard**

3

The Bankruptcy Code defines "single asset real estate" as:

4

> [R]eal property constituting a single property or project, other than
> residential real property with fewer than 4 residential units, which
> generates substantially all of the gross income of a debtor who is not a
> family farmer and on which no substantial business is being
> conducted by a debtor other than the business of operating the real
> property and activities incidental thereto.

5

6

7

8

9   11 U.S.C. § 101(51B).  The Ninth Circuit has recognized that real property must meet

10  three elements to qualify as "single asset real estate" under this definition: (1) the

11  property is "a single property or project, other than residential real property with fewer

12  than 4 residential units";[1] (2) "the property generates substantially all of the gross

13  income of a debtor who is not a family farmer"; and (3) "no substantial business is

14  being conducted by a debtor [on the property] other than the business of operating the

15  real property and activities incidental thereto." *In re Meruelo Maddux Props., Inc.*,

16  667 F.3d 1072, 1076 (9th Cir. 2012) (quotation marks omitted).

17  11 U.S.C. §§ 101(51B) and 362(d)(3) ("§ 362(d)(3)") were enacted as part of

18  the Bankruptcy Reform Act of 1994 ("BRA").  *In re CBJ Dev., Inc.*, 202 B.R. 467,

19  470 (B.A.P. 9th Cir. 1996).  "The purpose of a single asset real estate determination is

20  to allow for relief from the automatic stay under 11 U.S.C. § 362(d)." *Meruelo*

21  *Maddux*, 667 F.3d at 1075.  The movant bears the burden of demonstrating that a

22  property constitutes single asset real estate. *In re Hassen Imports P'ship*, 466 B.R.

23  492, 507 (Bankr. C.D. Cal. 2012); *see also In re Meeks*, 349 B.R. 19, 21 (Bankr. E.D.

24  Cal. 2006).

25  _____

26  [1] The Parties do not dispute that the Hotel development is a single project that is not

27  residential real property with fewer than four residential units, and thus, satisfies the
    first element of § 101(51B).  The court, therefore, will limit its analysis to the second

28  and third elements of the statutory definition in the discussion below.

To determine whether property qualifies as "single asset real estate", courts first look to the plain language of the statute.  *See Meruelo Maddux*, 667 F.3d at 1076. "Where the statute's language is plain, the sole function of the courts is to enforce it according to its terms, for courts must presume that a legislature says in a statute what it means and means in a statute what it says there."  *Id.* (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. BF Goodrich Aerospace Aerostructures Grp.*, 387 F.3d 1046, 1051 (9th Cir. 2004)).  To the extent that either § 101(51B) or § 362(d)(3) is ambiguous, however, courts look to pre-1994 BRA single asset cases for guidance.[2]  After reviewing such prior opinions, courts have recognized that the term "single asset real estate" was a "well-known and often used colloquialism[] which essentially refer[s] to real estate entities attempting to cling to ownership of real property in a depressed market … rather than businesses involving manufacturing, sales or services."  *In re CBJ*, 202 B.R. at 471 (citing *In re Philmont Dev. Co.*, 181 B.R. 220, 223 (Bankr. E.D. Pa. 1995)).

This framework guides the court's analysis of the real property at issue here.

## II.  Analysis

### A.  Property Which Generates Substantially All of The Gross Income of a Debtor

The second element of the definition of "single asset real estate" requires the property to "generate[] substantially all of the gross income of a debtor."  11 U.S.C. § 101(51B).  Although there is some dispute as to the degree to which the Hotel development has been completed, there is no dispute that the Hotel is incomplete and not producing income at present.

---

[2] It is well established that "where Congress uses terms that have accumulated settled meaning under the common law, a court should infer, unless the statute otherwise dictates, that Congress meant to incorporate the established meaning of these terms." *In re CBJ*, 202 B.R. at 471 (citing *Field v. Mans*, 516 U.S. 59, 69 (1995) & *In re Oceanside Mission Assocs.*, 192 B.R. 232, 236 (Bankr. S.D. Cal. 1996)).

During its hearing on Shady Bird's SARE Motion, the Bankruptcy Court interpreted the second element to mean that § 101(51B) as drafted does not include property that produces no income.  EOR Vol. VI at 1651.  Recognizing that its interpretation of § 101(51B) was contrary to the view of most other courts and that it "may be the only minority view," *id.*, the Bankruptcy Court stated that it respectfully disagreed with the rulings by other courts because it did not believe the analysis in those cases was supported by the language of the statute itself, *id.* at 1661-63.  As the Bankruptcy Court explained, it "personally [did] not believe that [§] 101(51B) as drafted includes a property that produces no income," as "it is a legal fiction to say that even a property that has no income meets the requirement of [§] 101(51B) because it's a single property for which there is no income."  EOR Vol. VI at 1651.[3]

Upon review of the transcript of the April 15, 2021 hearing, the Parties' briefing and supporting evidence, and relevant case law, this court agrees with the view articulated by the majority of courts that have addressed this issue and holds that property that does not produce income may qualify as "single asset real estate" under § 101(51B).  *See, e.g.*, *In re Webb MTN, LLC*, Case No. 3:07-bk-32016, 2008 WL 656271, at *4 (Bankr. E.D. Tenn. Mar. 6, 2008) (finding largely undeveloped land which generated no income was "single asset real estate"); *In re Kinard*, Case No. 2:01-bk-03621-JW, 2001 WL 1806039, at *5 (Bankr. D.S.C. Nov. 16, 2001) (collecting cases and concluding "that Congress did not intend to exclude from the definition of single asset real estate undeveloped or vacant land currently generating no income for debtors, particularly where the only prospect for the funding of a plan of reorganization is through the leasing of that property in order to obtain time to sell

---

[3] At the hearing, the Bankruptcy Court suggested Shady Bird appeal this issue if it wanted greater clarity on the law, stating: "If there's an appeal …, hopefully it will go all the way up to the Ninth Circuit. … [T]he Ninth Circuit or the BAP or a district court can say, Judge Smith, you've got it wrong or you've got it right.  But all I can do is rule based on my interpretation of [§] 101(51B) and in my view this case isn't it and so the motion will be denied."  EOR Vol. VI at 1664.

the property at a speculated appreciated value"); *In re Pensignorkay, Inc.*, 204 B.R. 676, 682 (Bankr. E.D. Pa. 1997) (finding "the fact that the real property is currently undeveloped and not generating any income … is of little consequence for purposes of the inquiry here, since the Court is satisfied that Congress did not intend to excuse from compliance with the revised statute the class of debtors who hold undeveloped tracts of land for future development"); *In re Oceanside*, 192 B.R. at 236 (finding "'single asset real estate' includes undeveloped real property which generates no income"); *In re Kkemko, Inc.*, 181 B.R. 47, 51 (Bankr. S.D. Ohio 1995) (recognizing that in the bankruptcy context, common usage of "single asset real estate" "meant a building or buildings which were intended to be income producing, or raw land").

In *In re Oceanside*, 192 B.R. at 234, the bankruptcy court undertook a detailed analysis of whether § 101(51B) was intended to "exclude debtors that own undeveloped land that generates no income." The court found that the language of the statute was ambiguous. This court agrees § 101(51B) is ambiguous with respect to undeveloped or partially developed real property, as demonstrated by the fact that reasonable courts, like the Bankruptcy Court here, have disagreed about whether such property "generates substantially all of the gross income" of a debtor who has no income. This court, therefore, looks to the statutory scheme and legislative history for guidance. Here, as well, the court finds the reasoning of *In re Oceanside* to be persuasive:

> Reading the first, or "gross income," clause to include raw land that generates no income is awkward but possible. If the debtor has no income, then substantially all of its income could be said to be generated by the property; i.e., substantially all of nothing is nothing. In addition to the awkwardness, this interpretation seems to render the second clause, "and on which no substantial business is being conducted by a debtor other than the business of operating the real property," superfluous. If the debtor has no "gross income", then the debtor is obviously not conducting "substantial business" on the property, or anywhere else for that matter. Conversely, a debtor operating a substantial business would not derive substantially all of its income from the property and would thus be excluded under either

8

clause.  It is well settled that statutes are to be interpreted so as to avoid rendering any portion superfluous.  [Citations.]  Thus, one might conclude that the two clauses are designed to exclude different types of property: the "gross income" clause to exclude property which generates no income and the "substantial business" clause to exclude restaurants, hotels, and the like.  There are, however, problems with this interpretation.

Interpreting the statute to exclude raw land does not appear to serve the purpose of the statutory scheme.  Sections 101(51B) and 362(d)(3) are designed to require debtors with "single asset real estate" to act in an expedited fashion.  [Citations.]  The consequence of not acting quickly is that the automatic stay may be lifted without further ado.  [Citation.]  There is no apparent purpose for Congress to have excused debtors who own only raw land from this expedited program: If a debtor who owns an apartment complex is forced to act quickly why not a debtor who owns raw land?  Legislative enactments are not to be construed as establishing statutory schemes that defeat the purpose of the statutes.  [Citation.]  Rather, appropriate statutory construction favors the more reasonable result.  [Citation.]

*Id.* at 234-35 (emphasis omitted).

The *In re Oceanside* court further noted that Congress provided a "Section-By-Section Description" with the BRA, in which it paraphrased the definition of "single asset real estate":

Section 218.  Single asset real estate

This section will add a new definition to the Code for "single asset real estate," meaning real property … which generates substantially all of the gross income of the debtor and has aggregate noncontingent, liquidated secured debts in an amount up to $ 4 million.

*Id.* at 235 (citing H.R. Rep. No. 835, 103d Cong., 2d Sess. (1994) at 10768).  As Congress did not include language matching the "substantial business" clause in describing the scope of "single asset real estate," the *In re Oceanside* court held that Congress did not intend it to be a separate requirement and that both the "gross income" and the "substantial business" clauses were meant to include debtors with income generating operations beyond the real property.  *Id.*

9

1         *In re Oceanside* additionally noted that other legislative history demonstrated

2    that "single asset real estate" was to be "limited to investment property of the debtor,"

3    which would include raw, undeveloped land.  *Id.*  The court further recognized that its

4    holding was consistent with the pre-1994 BRA colloquial use of the phrase "single

5    asset real estate," in which the phrase was applied to raw, undeveloped land.  *Id.* at

6    236 (collecting cases);[4] *see also CBJ*, 202 B.R. at 470-71.  Based on the statutory

7    purpose of § 101(51B), legislative history, and the use of the term in prior case law, *In*

8    *re Oceanside* concluded that "'single asset real estate' includes undeveloped real

9    property which generates no income."  This court agrees with this analysis.

10        At the hearing on the SARE Motion, the Bankruptcy Court did not identify any

11   legal authority to support its conclusion that the statute excludes property that

12   produces no income and appears to have held that the statutory language is not

13   ambiguous.[5]  *See* EOR Vol. VI at 1651.  The Source Hotel, likewise, does not identify

14   any legal authority supporting the Bankruptcy Court's interpretation of § 101(51B).

15   *See* AB 14-24.  The Source Hotel, instead, argues that the Hotel should not be

16   considered "single asset real estate" because The Source Hotel "has spent an

17   extraordinary amount of money, time, and resources during the last several years

18   developing and constructing the Hotel, and commenced its Chapter 11 bankruptcy

19

20   _____

21   [4] As *In re Oceanside*, 192 B.R. at 236, explained: "If Congress intended to exclude
     raw land from the definition they would have done so specifically or at least explained

22   in the comments that the definition was meant to exclude raw land.  Without such an
     express exclusion this court does not believe that Congress meant for 'single asset real

23   estate' to mean less than it did before the sections were enacted."

24   [5] Although the Bankruptcy Court did not expressly state that it found the statutory
     language to be unambiguous, in light of the statutory purpose of § 101(51B), the

25   legislative history, and the use of the term "single asset" in prior case law, the

26   Bankruptcy Court's reasonable interpretation of the statutory language would only
     control over the reasonable interpretation of the majority view if it found the language

27   of the statute to be unambiguous.  *See In re CBJ*, 202 B.R. at 471; *In re Oceanside*,

28   192 B.R. at 235-36.

case to save the Hotel from foreclosure and preserve the equity in the Hotel for the benefit of all creditors, to obtain a 'breathing spell' to obtain financing to perform the remaining 15% construction work required to complete the Hotel, and to be afforded a reasonable opportunity to restructure its financial affairs and repay its debts in an orderly fashion." AB 22.

The Source Hotel cites *In re Kkemko*, 181 B.R. at 49, to note that:

> [I]n enacting §§ 101(51B) and 362(d)(3), providing for extraordinary expedition in single asset real estate cases, Congress was motivated by a desire to accord relief in a particular familiar bankruptcy situation. That situation is where the owner of an encumbered building is attempting to avert loss of his building to his major lender who is grossly undersecured, and where there is no real hope that the owner can come forth with a viable confirmable Chapter 11 plan.

AB 23. According to The Source Hotel, the circumstances here are not analogous to those in *In re Kkemko* because "there is substantial equity in the Hotel and Shady Bird is far from undersecured." *Id.* The Source Hotel, however, does not identify any legal authority that holds that the lender's degree of security in the property at issue is a factor to be considered in making a single asset real estate determination. *See id.* Under the language of § 101(51B) and *Meruelo Maddux*, 667 F.3d at 1076, it is not.

Furthermore, while The Source Hotel contends "there is more than a reasonable possibility of a successful reorganization in the Debtor's case, and the Debtor should be provided an adequate and fair opportunity to effectuate such a reorganization," that is an argument it can raise under § 362(d)(3)(A) in response to a determination that the Hotel is "single asset real property." *See* 11 U.S.C. § 362(d)(3)(A) (recognizing relief from a stay is not to be granted if, within the time specified, "the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time"). The fact that The Source Hotel appears to believe that additional time is necessary for conditions to change to allow it to obtain post-petition financing to complete the construction of the Hotel and begin operation, suggests that the Hotel, in its current, incomplete state, has essentially become investment property of The

1    Source Hotel that is little different from raw, undeveloped land.  *See In re Humble*

2    *Place Joint Venture*, 936 F.2d 814, 817 (5th Cir. 1991) (pre-1994 BRA case finding

3    partially developed land, which the court referred to as "raw land," was not entitled to

4    Chapter 11 protection while awaiting changes in market conditions").

5         Accordingly, the court adopts the majority view expressed by other courts that

6    the statutory definition of "single asset real estate" includes property which generates

7    no income.  Applying this legal conclusion to the case at hand, there is no dispute that

8    the Hotel, in its current state, is not producing any income and that The Source Hotel

9    is not earning any gross income.  *See* AB 5-6, 19-23.  Thus, the Hotel meets the

10   second element to qualify as "single asset real estate" under § 101(51B).  *See Meruelo*

11   *Maddux*, 667 F.3d at 1076.

12        **B.     No Substantial Business Being Conducted**

13        The third element for real property to qualify as "single asset real estate" is that

14   "no substantial business is being conducted by a debtor [on the property] other than

15   the business of operating the real property and activities incidental thereto."  *Meruelo*

16   *Maddux*, 667 F.3d at 1076.

17        The Bankruptcy Court also denied Shady Bird's SARE Motion under the third

18   element of § 101(51B), holding that the Hotel did not qualify as "single asset real

19   estate," even if the Bankruptcy Court were to assume that the majority view on the

20   second element were correct.  EOR Vol. VI at 1661 at 1661-63.  As the Bankruptcy

21   Court explained: "if we are going to engage in a legal fiction that this property is an

22   income producing property within the meaning of [§] 101(51B) … we have to look at

23   the intent for which the property has been constructed, even partially so."  *Id.* at 1652.

24        Because the Parties had not presented "any evidence to the contrary that the

25   intent [was] for there to be or the plans include[d] a restaurant, a bar, laundry services

26   and other [types of businesses]," which courts have held prevents a finding that "no

27   substantial business is being conducted by a debtor other than the business of

28   operating the real property and activities incidental thereto," in other cases involving

hotels, the Bankruptcy Court held that the Hotel did not satisfy the third element of the definition. *Id.*

The Source Hotel argues the court should look to the current condition of the Hotel rather than The Source Hotel's intent in considering the third element of the definition, and that, as it stands, there is no substantial business being conducted on the property. OB 19-25. The Source Hotel requests this court affirm the Bankruptcy Court's holding and find that the Hotel does not qualify as "single asset real estate" based on the intent for which it has been partially constructed. AB 21-22.

In *In re CBJ*, 202 B.R. at 473, the Bankruptcy Appellate Panel ("BAP") considered whether a non-operational hotel was "single asset real estate." There, the bankruptcy court held that a hotel did not qualify as "single asset real estate" because a gift shop, a restaurant, and a bar located on the property constituted substantial other business. *Id.* at 472. The creditor appealed the decision, arguing that the hotel qualified as "single asset real estate" because all of the debtor's other businesses were closed at the time the SARE Motion was heard. *Id.* at 472-73.

The BAP recognized that "[t]he use of the present tense by Congress in § 101(51B) suggests that only current activities may be considered in determining whether the debtor is conducting substantial business activities other than the operation of the property. Any other conclusion would allow all debtors with unrented commercial space to evade § 362(d)(3) by simply declaring an intention to start a business." *Id.* at 473. Nevertheless, the BAP found that the hotel was not "single asset real estate" because the debtor had operated the other businesses shortly before filing its petition for bankruptcy relief, the other businesses were only closed for renovations which were being carried out promptly, and the debtor's investors had invested a substantial amount of money into the renovations. *Id.*

This court agrees with *In re CBJ*, *id.*, that Congress' use of the present tense in the statute, i.e., "is being conducted", requires the court to evaluate the current business activities of a property or project rather than the intentions of the parties. As

13

recognized in *In re Charterhouse*, "[i]n deciding whether property constitutes 'single asset real estate,' the Court must look to current facts, not to those existing in the past, nor to Debtor's aborted plans for the future." *In re Charterhouse Boise Downtown Props., LLC*, Case No. 1:07-01199-JDP, 2008 WL 4735264, at *2 (Bankr. D. Idaho Oct. 24, 2008) (finding that "an unfinished, high-rise commercial building, and the corner on which it is located" was "single asset real estate").

Here, it is undisputed that The Source Hotel is not currently conducting any business related to the Hotel outside of activities related to its construction and development. The evidence in the record shows that all construction on the Hotel has been on hold since "late 2019," when Evertrust refused to issue the remaining $4 million of the Loan, and that The Source Hotel has been unable to secure additional financing as of the filing of its Answering Brief. *See* AB 6-13; EOR Vol. III at 0900. Unlike the hotel in *CBJ*, where the associated restaurant and bar were previously operational and only under temporary renovation, the Hotel and associated other businesses here have never been in operation and remain purely within the realm of The Source Hotel's intent to conduct future business. Such intent does not constitute "substantial business … being conducted by [The Source Hotel] other than the business of operating the real property and activities incidental thereto." *See Meruelo Maddux*, 667 F.3d at 1076.

The Source Hotel argues there is no question that, if the Hotel were completed and operating, it would not constitute "single asset real estate" within the definition of § 101(51B). AB 15. Courts have recognized that normally, "[t]he <u>active</u> nature of a hotel business inherently gives the hotel a better chance of reorganizing; there are more business activities and thus more opportunities to cut costs." *In re Iowa Hotel Invs., LLC*, 464 B.R. 848, 853 (Bankr. N.D. Iowa 2011) (emphasis added). However, where a hotel remains in development, it is not active and the same rationale does not apply. *See In re Charterhouse*, 181 B.R. at *2 (holding unfinished high-rise commercial building was "single asset real estate"). Thus, the fact that courts have

held that operating businesses can prevent a hotel from being "single asset real estate" is inapposite here.

For these reasons, the court finds no substantial business is being conducted at the Hotel other than the business of operating the real property and activities incidental thereto, and that the third element of 11 U.S.C. § 101(51B) is met.  Having found that the Hotel falls within the definition of "single asset real estate" under 11 U.S.C. § 101(51B), the court finds that the Bankruptcy Court erred when it denied Shady Bird's SARE Motion.

### **CONCLUSION**

For the foregoing reasons, the court REVERSES the Bankruptcy Court's Order Denying the Motion of Shady Bird Lending, LLC for Order Designating Chapter 11 Case as Single Asset Real Estate Case Pursuant to 11 U.S.C. §§ 101(51B) and 362(d)(3) and REMANDS the action to the Bankruptcy Court for further proceedings consistent with this ruling.


IT IS SO ORDERED.


Dated: June 8, 2022

FERNANDO L. AENLLE-ROCHA
United States District Judge

15